**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **GIDEON OBADAN** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | )     **Civil Action No.** |
| **KINDRED HOSPITAL** | ) |
|       **Defendant** | ) |
| | ) |

**COMPLAINT**

**(Age Discrimination, Hostile Work Environment and Retaliation in Employment)**

**Introduction**

1.      Plaintiff, Gideon Obadan, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq**.,** the Age Discrimination in Employment Act, 29 USC §621, et seq., and Chapter 21 of Texas Labor Code to remedy acts of employment discrimination, Hostile Work Environment and retaliation perpetrated against him by the Defendant and/or its agents.  Plaintiff contends that Defendant's officials discriminated against him by falsifying and fabricating facts that are untrue against him because of his age (over 68). Plaintiff further asserts that management retaliated against him for having complained about such discrimination, created a hostile working environment for him, caused him to suffer depression, and finally, terminated his employment of approximately twenty (20) years with the Defendant.

## Jurisdiction

2.     This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 and The Age Discrimination in Employment Act, 29 USC§ 621, et. seq.

## Venue

3.     Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2); as Plaintiff was employed by the Defendant in Houston, Texas at the time of his termination, plaintiff's employment records are maintained by the Defendant in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## Parties

4.     Plaintiff, Gideon Obadan, approximately 68 -years old male, is a citizen of the United States and a resident of Houston, Texas. At all times relevant to this suit, until his termination around August of 2018, he was employed with Defendant in the Bay area office on Sam Houston, Houston, Texas as a Lead Registered Respiratory Therapist.

5.     Defendant Kindred Hospital (hereinafter "Kindred"), upon information and belief, was organized under the laws of the State of Texas and, is a citizen of Texas. Defendant may be served through its agent, CT Corporations System, 1999 Bryan Street Suite 900, Dallas, Texas 75201.

## Statement of Facts

6.   Plaintiff Gideon Obadan, a 68-year-old -male, was a Registered Respiratory Therapist with about

twenty years of service with Kindred before being terminated by his Director.

7. At the time of his termination from employment, Mr. Obadan worked in the Respiratory Department and was the only degreed, Registered Respiratory Therapist at the Bay area location of Kindred.

8. For approximately 19 (nineteen) consecutive years, Plaintiff was supervised by Respiratory Director Director, Debie McMorrow.

9. Throughout his employment with the Defendant, Plaintiff worked diligently, excellently and without reproach.

10. As a result, he received above outstanding ratings and excellent performance ratings from his Director, Debie McMorrow, throughout his first 19 years with the Defendant.

11. For about three to five consecutive years, Plaintiff received the "Employee of The Year" Awards in the organization due to his outstanding performance and continued to perform excellently, helping staff and patients to the extent that many patients spoke highly of him to his Director and several gave him a "thank you" card. Additionally, Plaintiff received many "employee of the month" awards at Kindred.

12. Due to his relentless effort to increase, augment and improve services to patients; his assistance and encouragement to coworkers and his dedication and commitment to Defendant, Plaintiff was made the Lead Respiratory Therapist around year 2000.

13. Prior to being made the Lead Respiratory Therapist and thereafter, Plaintiff showed up in inclement weather when virtually no employee did.

14. Additionally, Plaintiff was an active participant and was very instrumental in developing the protocol and the manual or handbook for the employees at Kindred.

15. Aside from speaking with Plaintiff's Director, patients spoke to some Physicians and

Plaintiff's colleagues about his professionalism, caring and ability to make patients comfortable and feel at home.

16.     Things went without incident until early 2018 when Shawn Weatherly replaced Debra McMorrow who left her employ around November of 2017. Shawn Weatherly is in his mid to late 30s while Debra McMorrow the previous Director was around 60 years old.

17.     Weatherly introduced himself to Plaintiff early in 2018, and at the end of that first meeting asked Plaintiff about his retirement plans.

18.     Subsequent to that initial meeting, Weatherly who was more often than not in the Clear Lake location, would visit the Bay area location and would ask to speak with Plaintiff privately. In the discussion, Weatherly would again revisit the discussion on Plaintiff's retirement plans.

19.     At about the time Weatherly came on board, Tiffany Green, who acted like Plaintiff's supervisor on the premises started to call Plaintiff "the grey hair man;" "you've been here more than anybody you should start working on retirement now;" "you're too old, when are you retiring?" and so many other age-related comments.

20.     Tiffany Green went as far as making the statements in meetings where other employees were, to the extent that Plaintiff got offended and told her to stop.

21.     Tiffany Green did not stop and the other employees continued to call Plaintiff "the man with grey hair;" "the oldest employee;" "too old" and other age-related remarks. Green made her remarks about 4-5 times a week. Thereafter, Plaintiff was excluded from meetings and other company-related events.

22.     Around June 2018, when Weatherly visited the Bay area location, Plaintiff met with him and told him he was not comfortable with the remarks and that he had told Green to stop making, but that she had persisted. He added that, as a result, other employees had joined Green in

calling Plaintiff names he did not like and found offensive. Weatherly promised to talk to Green and take care of the matter. Yet Weatherly still revisited the issue on Plaintiff's retirement plans at the end of their conversation.

23.     Green did not stop calling Plaintiff names. Neither did the other employees. The name-calling persisted and caused Plaintiff depression to the point that it affected him on the job.

24.     Around July 2018 when Weatherly visited the Bay area location again, Plaintiff repeated his complaints about the name-calling which had made him unhappy about his job which was the biggest source of joy to him prior to the name-calling.

25.     Immediately after Plaintiff complained, Weatherly informed Plaintiff that a nurse told him that Plaintiff was not doing his job and that at a particular time of the night, Plaintiff did not pay attention to certain things. Plaintiff then showed his index and notes to Weatherly to prove him wrong. Weatherly responded "you know how nurses are. They can lie." Plaintiff then asked who the nurse was, that complained, Weatherly said he did not know the name of the nurse.

26.     In spite of his statements to Plaintiff, Weatherly gave a document to Plaintiff; told him to sign it and said "Don't worry I'm not writing you up. This is just to show that we spoke about the matter so go ahead and sign it." Plaintiff proceeded to sign it and asked for a copy. Weatherly said "I told you not to worry about it. It's just my CYA so you don't need a copy. If I was writing you up, then I'd give you a signed copy."

27.     Subsequent to that meeting with Plaintiff, Weatherly repeated his conduct of handling Plaintiff a document to sign; failed to give Plaintiff the name of any nurse and still failed to give Plaintiff a copy of the document. Plaintiff again showed Weatherly his notes and index to prove him wrong. As Plaintiff began to write what happened the night in question, Weatherly discouraged Plaintiff from writing, telling Plaintiff he did not have to write every explanation on the document

5

and that since he was not disciplining Plaintiff, he did not have to write everything down as he himself (Weatherly) knew how bad and envious co-workers can get.

28.     Suspecting that Weatherly had an ulterior motive, Plaintiff called the corporate office, lodged a complaint with one Sandra or Seatta, who promised to call him back but never did.

29.     Plaintiff was fired within two weeks of his last complaint under the guise that an employee was afraid of him.

30.     Specifically, early in August of 2018, an incident occurred in which Plaintiff responded to a "code blue" call on his pager. Plaintiff followed the protocol meticulously and made sure the other employees around him followed protocol. An employee named Bonnie Bauer, who was a Respiratory Therapist, then discouraged another Therapist, who had been called upon by Plaintiff, from following the protocol under "code blue." The matter was resolved and Plaintiff left for the day.

31.     Shortly thereafter, Weatherly called Plaintiff and suspended him, telling him that an employee had called corporate and had complained. In response, Plaintiff informed Weatherly that he was the employee that called corporate because Weatherly had not addressed the issues he complained about; that he believed Weatherly was not acting in his best interest and had made him sign phony documents.

32.     Weatherly then informed Plaintiff that another employee had actually called corporate complaining about Plaintiff. Plaintiff was shocked and asked what the complaint was about. Weatherly told Plaintiff that he would let him know after investigation.

33.     About a couple of days later, while Plaintiff was on suspension, Weatherly called Plaintiff to come to work. He complied. While he was there, Weatherly told Plaintiff that Plaintiff had not addressed or give a meaningful response to the questions he had asked Plaintiff multiple

times. Plaintiff also told Weatherly that he had not addressed the issues he brought before him several times on the name calling which subjected him to a hostile work environment.

34. Weatherly then took Plaintiff to the Clinical Director, Joanne Barret's office. Thereat, Weatherly fired Plaintiff and said that the code blue incident had been investigated and that Bonnie Bauer had complained that she was afraid of Plaintiff; and therefore they had to let him go.

35. Plaintiff had never threatened anyone. Nor had there ever been any suggestion by anyone in his over 20 years at Kindred that he was a threat to anyone let alone fellow workers.

36. In fact, Bonnie Bauer, the employee involved in the code blue incident that allegedly called corporate to complain that she was afraid of Plaintiff, had worked with Plaintiff for at least 6 years without incident. The other employees that were present at the code blue incident are Rojan and Josephine, who were also Respiratory Therapists, and both of whom had told Plaintiff on multiple occasions that they had great regard for him as he is a stickler for the rules and protocols of Kindred.

37. Even after the incident, these employees told Plaintiff that he handled the code blue situation very well as was expected of him.

38. All condition precedents have been met or satisfied as Plaintiff filed a charge with EEOC and/or TWC and the entity issued and eventually forwarded a Right to Sue Letter to Plaintiff via email for E-Signature. Plaintiff files this suit within 60 days of receipt of said Letter, which is attached.

39. The incidents and conduct of the Defendant described herein had caused Plaintiff serious harm and injuries, loss of dignity, loss of respect.

40. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not

limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief. Plaintiff also suffered a loss of wages and seeks front pay and back pay as a result of the actions of the Defendant.

41. Plaintiff has not been able to find a like or similar job as of the present day; and the Defendant's conduct has caused him extreme hardship and instability, financial and otherwise. Plaintiff suffered economic and non-economic damages as a result of the Defendant's conduct.

42. All the Defendant's employees were described herein and were acting within the scope of their employment.

43. Defendant's unlawful conduct constitutes a knowing malicious, willful and wanton violation of the law.

## Count One

**(Age Discrimination in Violation of the Age Discrimination in Employment Act (ADEA) 29 USC 621)**

44. The foregoing paragraphs are realleged and incorporated by reference herein.

45. The Defendant's conduct as alleged above constitutes discrimination based on Age discrimination in violation of ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus. Plaintiff is above 40 years of age; he performed his job very well; he was fired from a job he was qualified to do and replaced by someone younger or otherwise discharged because of his age.

## Count Two

**(Retaliation or Reprisal for Engaging in Protected Activities)**

46. The foregoing paragraphs are realleged and incorporated by reference herein.

47. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus. Plaintiff suffered adverse employment action after engaging in protected activities. There was a causal connection between Plaintiff's protected activities and the adverse employment decision.

## Count Three

### (Hostile and Abusive Working Environment)

48. The foregoing paragraphs are realleged and incorporated by reference herein

49. The Defendant's conduct as alleged above constitutes hostile and abusive working Environment in violation of Title VII, and the ADEA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus. The harassment suffered by Plaintiff because of his age was sufficiently severe and pervasive and altered the conditions of his employment.

## Prayer for Relief

WHEREFORE, the Plaintiff requests that the court award him:

(a) Reinstatement to his position – Lead Respiratory Therapist with all attendant backpay, benefits and other emoluments of employment.

(b) Compensatory damages suffered because of the discrimination, hostile work environment and retaliation.

(c) Exemplary damages and Front pay

(d)     costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(e)     other damages and further relief as deemed just.

## JURY DEMAND

The Plaintiff requests trial by jury.

Respectfully Submitted,

**THE GBENJO LAW GROUP**

/s/ A. Sampson Gbenjo
A. Sampson Gbenjo
State Bar No. 24043047
Fed. Id. No. 438357
9009 Bissonnet Street
Houston, Texas 77074
Phone: 713-771-4775
Fax: 713-771-4784
Yourlawgroup@yahoo.com